UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHRISTINA ANN MARIE MERRELL                                      PLAINTIFF

v.                                          CIVIL ACTION NO. 4:26-CV-505-JHM

HON. SUSAN WESLEY McCLURE et al.                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

On review of *pro se* Plaintiff Christina Ann Marie Merrell's motion for leave to be allowed to proceed *in forma pauperis* in this case, the Court finds that Plaintiff makes the financial showing required by 28 U.S.C. § 1915(a). The Court, therefore, **GRANTS** the motion (DN 3).

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997)), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, this case will be dismissed.

### I. SUMMARY OF ALLEGATIONS

Plaintiff initiated this action by filing a Complaint for Fraud on the Court and Emergency and Declaratory Relief (DN 1) and a Petition for a Federal Writ of Prohibition (DN 3). She sues Hopkins County Circuit Court Judge Susan Wesley McClure; Attorney Marcus R. Little; Department for Community Based Services (DCBS) Social Workers Vanessa McGowan, Jerri Fisk, and Rebecca White; Assistant County Attorneys Ashley Bruce and Hillary Lantrip Croft; Melanie Rolley, Guardian Ad Litem for Children; and Cabinet for Health and Family Services – DCBS, Hopkins County Office.

**A. Complaint (DN 1)**

Plaintiff attaches an affidavit to her complaint, in which she avers that in 2017 she suffered a traumatic brain injury (TBI) at the hands of her now ex-husband.[1]  She states that soon after she filed for divorce and moved to Kentucky, where Judge McClure transferred the protective order against her husband from North Carolina to Kentucky.[2]  Since then, according to Plaintiff, she has been ordered to pay child support by Kentucky Foster Care because her oldest three children were placed in foster care, which, she alleges, was done "to silence my children and me."  She refers to the state-court child-support case against her, No. 19-CI-00488.

Plaintiff states that she was arrested for contempt of court for not paying child support and was never given accommodations for her TBI-related disability by the state court.  She further states that because of her PTSD, TBI, and fear of retaliation, it has "taken eight years for me to know how to even *start* to address this legally."  Plaintiff explains that she faces another contempt hearing for failure to pay child support in state court on July 27, 2026, where they will "illegally incarcerate me again, for 6 months this time if this court does not intervene."

Plaintiff alleges that Little, her ex-husband's attorney, and Judge McClure, McGowan, Fisk, White, Bruce, Croft, and Rolley all participated in the state-court case against her for suspected child neglect or endangerment "created" by Judge McClure and Little.  Plaintiff alleges that DCBS had no evidence that she was a danger and that Judge McClure instead "created" a case against Plaintiff that did not exist based on unsworn allegations; that her ex-husband's attorney, Little, had fabricated evidence, after which the Court gave Plaintiff's ex-husband custody of her children, put her youngest child up for adoption, jailed Plaintiff in retaliation, and enforced

---

[1] Plaintiff attaches a medical record from a July 2026 neurologist visit and other medical records regarding her TBI.
[2] Plaintiff includes copies of a 2018 temporary restraining order directing that her husband have no contact and a Kentucky emergency protective order (EPO) dated July 25, 2018.

fraudulent orders for Plaintiff to pay child support all without Americans with Disabilities Act (ADA) accommodations for her TBI.

Plaintiff points to what she refers to as fraud on the court -- a petition for order of protection in state court from Samantha Moore filed May 04, 2020, to restrain Plaintiff from contacting her child, whom Moore was raising at Plaintiff's request.[3]  The state court denied the petition because Moore did not verify her allegation in front of the clerk or other authorized person.  Plaintiff contends that these facts are "structural fraud" on the state court rendering its judgment void *ab initio*.  Also, the state court had contacted Little and confirmed that Moore did not want to proceed on the petition.  However, Plaintiff attaches a Memo dated May 4, 2020, in which Judge McClure stated that she had informed Little that based on the *ex-husband's* EPO requests he filed with the court she made reports of suspected abuse or neglect to White, McGowan, and Rolley.

Plaintiff requests the Court to declare that the state-court judgments are void *ab initio*, grant an emergency temporary restraining order (TRO) on child-support enforcements, appoint a special master, and find that Defendants committed fraud.  She also requests a writ of prohibition halting state-court enforcement of its orders, appointing her counsel, and referring Defendants to proper authorities.

### B. Petition for Federal Writ of Prohibition (DN 4)

Plaintiff's petition mirrors the complaint.  It requests a writ of prohibition halting enforcement of fraudulent state-court judgments, retaliatory incarceration, and child-support obligations.  She argues that the state court acted without jurisdiction because the case was not based on a petition or sworn complaint, and was instead created by a Judge's "Memo" and in

---

[3] Plaintiff attaches copies of text screen shots that appear to show that Moore texted someone, "We never filed anything. I promise," with a handwritten note stating that these are text messages stating that Moore did not write or file a DVO, but rather Little did.

violation of state law[4]; that irreparable harm is being caused to her because of being jailed in retaliation, the loss of children, the illegal adoption of one child, fraudulent child-support enforcement, and trauma. She also asserts that an appeal to the state court was impossible due to the denial of ADA accommodations to her, retaliatory arrests, and "secret proceedings." She attaches many of the same exhibits as were attached to the complaint.

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

In addition, it is axiomatic that federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003) ("[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute."). "Jurisdiction defines the contours of the authority of courts to hear and decide cases, and, in so doing, it dictates the scope of the judiciary's influence." *Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604, 606 (6th Cir. 1998), *overruled on other grounds by Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548-49 (6th Cir. 2006). Federal courts have an independent duty to determine whether they have jurisdiction and to police the boundaries of their own jurisdiction. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010).

---

[4] Under Kentucky law, "It is well-established that a family court has a duty to report suspected child dependency, neglect, or abuse . . ." *C.B. v. Cabinet for Health & Fam. Servs.*, No. 2021-CA-0449-ME, 2022 WL 68177, at *5 (Ky. Ct. App. Jan. 7, 2022) (citing *Fugate v. Fugate*, 896 S.W.2d 621, 623 (Ky. Ct. App. 1995) (footnote omitted)).

The party who seeks to invoke a federal district court's jurisdiction bears the burden of establishing the court's authority to hear the case. *Kokkonen*, 511 U.S. at 377. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### III. ANALYSIS

#### A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine provides that lower federal courts are without authority to review final judgments of state courts and deprives federal district courts of jurisdiction over federal claims that are "inextricably intertwined" with state-court judgments. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Johnson v. Ohio Supreme Court*, 156 F. App'x 779 (6th Cir. 2005).

"The *Rooker-Feldman* doctrine prevents a party who loses in state court from appealing that decision to the lower federal courts." *McCormick v. Braverman*, 451 F. 3d 382, 396 (6th Cir. 2006). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, the Supreme Court cautioned that application of the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005). To determine whether *Rooker-Feldman* bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick*, 451 F.3d at 393.

Here, Plaintiff's claims stem from the state court's issuance and Defendants' enforcement of a child-support order. As Plaintiff's allegations and requests for injunctive relief make clear, hearing the claims presented in her complaint would require the Court to address issues

5

inextricably intertwined with those already adjudicated in state court. *See Rooker*, 263 U.S. at 414 (affirming district court's dismissal of a request to have a state-court judgment declared "null and void."); *Rouse v. Nessel*, No. 21-1630, 2022 WL 13631916, at *2 (6th Cir. July 11, 2022) (federal claims that require the district court to reject state child-support orders are barred under the *Rooker-Feldman* doctrine); *Raymond v. Moyer*, 501 F.3d 548, 553 (6th Cir. 2007) (holding that no exception applies to the *Rooker-Feldman* doctrine for procedural due process violations); *West v. Berkman*, No. 19-cv-12674, 2019 WL 12054757, at *1 (E.D. Mich. Nov. 6, 2019) (attack on child support enforcement orders barred by *Rooker-Feldman* doctrine); *Graves v. Cuyahoga Cnty. Child Support Enforcement Agency*, No. 1:25-cv-749-DAP, 2025 WL 1898973, at *2-3 (N.D. Ohio, July 9, 2025) (holding that doctrine applied where source of injury was at least in part the state court child-support judgment, where alleged injuries included the consequences imposed for violating the child support order including garnishment).

Additionally, while claims for due process, ADA discrimination, and First Amendment retaliation are civil-rights claims which this Court would have jurisdiction over pursuant to 42 U.S.C. § 1983, Plaintiff's requested declaratory and injunctive relief from Defendants' enforcement of the child-support order demonstrates her claims are a *de facto* appeal of the state court decision, not § 1983 claims, because granting such relief would require the Court to review and reject the state court's decisions. *Berry v. Schmitt*, 688 F.3d 290, 298–99 (6th Cir. 2012). Plaintiff cannot camouflage what is essentially an appeal of the state court's judgment as a claim under 42 U.S.C. § 1983. *See, e.g.*, *Rouse*, 2022 WL 13631916, at *2 (recognizing federal claims that require the district court to reject state child-support orders are barred under the *Rooker-Feldman* doctrine); *Raymond v. Moyer*, 501 F.3d 548, 553 (6th Cir. 2007) (holding there is no exception to the *Rooker-Feldman* doctrine for procedural due process violations).

Accordingly, the Court lacks jurisdiction in the case at bar.

### C. Petition for Writ of Prohibition

A writ of prohibition "is '[a]n extraordinary writ issued by an appellate court to prevent a lower court from exceeding its jurisdiction or to prevent a nonjudicial officer or entity from exercising a power.'" *Hughes v. Martin*, No. 3:22-cv-332, 2022 WL 1598254, at *2 (M.D. Tenn. May 19, 2022) (quoting *Prohibition*, *Black's Law Dictionary* (10th ed. 2014)). This Court, however, is not an appellate court, nor does it serve as an appellate court over Defendants in this action, and no writ of prohibition could issue from this Court.

### D. Letter to Court

Finally, in a letter to this Court attached to the complaint, Plaintiff requests an FBI investigation and criminal prosecution where appropriate.

The Court lacks authority to direct the FBI to investigate, *Tallent v. United States on behalf of Internal Revenue Serv.*, No. 3:23-CV-51, 2023 WL 4046268, at *5 (E.D. Tenn. June 16, 2023) (no authority to direct FBI or DOJ to investigate), and only federal prosecutors have authority to initiate federal criminal charges. *See United States v. Nixon,* 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

### IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: August 3, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
4414.009